UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

FREDERICK C. HARMS,

            Plaintiff,

      v.

POWER COUNTY SHERIFF JIM
JEFFRIES, in his official and individual
capacity, and POWER COUNTY, a
political subdivision of the State of Idaho,

            Defendants.

Case No. 4:11-CV-00111-EJL-CWD

MEMORANDUM ORDER

Plaintiff Frederick Harms brings this action against Defendants Jim Jeffries, in both his individual and official capacity as Power County Sherriff, and Power County, claiming breach of contract (either express or implied), violation of Idaho statute, the First and Fourteenth Amendments, and 42 U.S.C. §1983, based on the termination of Plaintiff's employment.   Defendants moved for summary judgment on Plaintiff's claims.   Plaintiff opposes the motion.   The issues have been fully briefed and are ripe for the Court's consideration.

Having fully reviewed the record herein, the Court finds that the facts and legal arguments are adequately presented in the briefs and record.   Accordingly, in the interest of avoiding further day, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this motion shall be decided on the record before this Court without a hearing.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was hired by Defendant Power County Sheriff's Office ("PCSO") in August 1990 as a deputy sheriff.   (Dkt. 17, p. 2 ¶10.)   Although Plaintiff was not hired pursuant to a written contract, Plaintiff maintains a supervisor informed him, at the time he first began his employment in 1990, that once Plaintiff completed a probationary term, he would not be terminated except for cause.   (Dkt. 28-2, p. 2, ¶2.)

In 1999, Power County adopted the Power County Personnel Manual (hereinafter "Policy Manual"), which outlined its policies with respect to all Power County Employees except those specifically exempted in the Manual. [1]   (Dkt. 21-1, p. 2, ¶4.) The first page of the Policy Manual contained a general disclaimer stating "THIS PERSONNEL POLICY IS NOT A CONTRACT.   This handbook supersedes any representation previously made whether verbal, written, express or implied."   (Dkt. 21-8, p. 1.) (emphasis in original) Plaintiff received the Policy Manual and signed a *Receipt and Acknowledgement Form*

---

[1]  Plaintiff was not an exempt employee under the provisions of the Policy Manual.

MEMORANDUM ORDER - 2

("Acknowledgement Form") indicating that he had understood and read the Policy
Manual. [2]   (Dkt. 21-9.)

Further, by signing the Acknowledgement Form, Plaintiff indicated he had read all
of the policies outlined in the Policy Manual, and that he agreed and understood that the
Policy Manual was, "NOT AN EMPLOYMENT CONTRACT NOR… A GUARANTEE
OF ANY PARTICULAR LENGTH OR TERM OF EMPLOYMENT, even after… [a]
successfully completed introductory period.   I also acknowledge and agree that I am an
EMPLOYEE AT WILL…. I further acknowledge that the statements made in this
handbook control verbal statements and representations made by county elected officials,
supervisors and county employees." (*Id*.) (emphasis in original)   In addition to the Policy
Manual, the PCSO also followed a Power County Sheriff's Department Policy and
Procedure Manual during Plaintiff's employment with the PCSO.   (Dkt. 28-4.)   Power
County codified the Policy Manual as law under Power County ordinance 1-6-2: Personnel
Policies and Guidelines Adopted.

Plaintiff continued to serve as a full-time Power County deputy sheriff from the
time he was hired until the time of his termination in August 2009.   (Dkt. 28-2, p. 1, ¶1.)
In late 2008 and early 2009, Plaintiff was involved in an investigation related to a stolen
airplane.   (*Id*.)   Although Plaintiff was cleared of any wrongdoing with respect to the
airplane, PCSO put Plaintiff on probation through an *Employee Warning Report* dated

---

2  Although the Policy Manual was republished and revised in 2003, neither Plaintiff nor Defendants contend the 2003
Policy Manual materially differed from the 1999 Policy Manual.

MEMORANDUM ORDER - 3

February 13, 2009 ("Warning Report"), following the investigation. (Dkt. 21-1, p. 4, ¶20.)

Plaintiff contends he was placed on probation for loitering. (Dkt. 28-2, p. 3, ¶13.) Defendants maintain Plaintiff was placed on probation due to his failure to conduct himself in a professional manner during the course of the airplane investigation. (Dkt. 21-1, pp. 4-5, ¶¶21-22.) Specifically, Defendants claim Plaintiff was placed on probation for swearing at and hanging up on a member of the public during the investigation. (*Id*.) The Warning Report supports both contentions, as it sustained findings of Plaintiff's failure to comply with both PCSO's loitering policy as well as with its policy regarding professional conduct. (Dkt. 21-10, p. 2.) Plaintiff was accordingly placed on probation for six months, and was advised that any further violation of PCSO's policies could result in his termination. (Dkt. 21-1, p. 5, ¶¶24-26.)

Throughout the course of his employment with the PCSO, Plaintiff served as a member of the Power County Search and Rescue Dive Team. (Dkt. 28-2, p. 4, ¶21.) Beginning in 2007 and continuing through Plaintiff's termination, the Dive Team was organized under Defendant Sherriff Jim Jeffries' chain of command, and was led by Idaho Fish and Game Officer Scott Wright. (Dkt. 28-2, p. 4, ¶22, Dkt. 21-1, p. 6, ¶32.)

Defendants allege that Sheriff Jeffries and Officer Wright had a discussion prior to July 25, 2009 regarding some members of the Dive Team not attending training and practices, and decided that such members would be dropped from the Dive Team. (Dkt.

MEMORANDUM ORDER - 4

21-3, pp. 5-6, ¶28.)   Sheriff Jeffries and Officer Wright determined that dropped individuals would be notified that they were no longer considered a member of the Dive Team, and would be asked to return any Dive Team equipment in their possession that had been purchased by Power County.   (*Id.*)   PCSO would also discontinue paying dive insurance premiums for any individuals who were no longer members of the Dive Team. (*Id.*)   Plaintiff was among the individuals dropped from the Dive Team for failure to attend trainings. (*Id.*)

Plaintiff maintains that he was never informed by anyone from PCSO or Officer Wright that he had been removed from the Dive Team.   (Dkt. 28-2, p. 5, ¶28.)   However, on or about July 26, 2009, Plaintiff and a friend who was also a member of the dive team discussed going for a dive.   (*Id.*, ¶¶29-30.)   Plaintiff's friend suggested that Plaintiff first contact Officer Wright to determine if Plaintiff's dive insurance premiums had been paid. (*Id.*, ¶31.)   Plaintiff called Officer Wright to ask if his dive insurance had been paid and was told that Plaintiff's dive insurance had been cancelled due to his failure to attend trainings.   (*Id.*, ¶33.)   Plaintiff complained that he had not been able to attend trainings because they conflicted with his work schedule.   (*Id.*, ¶34.)   Plaintiff then advised Officer Wright to "take the dive team and cram [it] in his ass."   (*Id.*, p. 6, ¶36.)

Officer Wright thereafter contacted the PCSO to inform them of his conversation with Plaintiff.   (Dkt. 21-3, p. 6, ¶29, Dkt. 28-2, p. 6, ¶38.)   Although Plaintiff maintains his statement to Officer Wright was made without animosity, Officer Wright informed the

MEMORANDUM ORDER - 5

PCSO that he believed his conversation with Plaintiff would have escalated into a physical altercation had it been face-to-face rather than over the telephone.   (Dkt. 28-2, p. 6, ¶¶37, 39.)   An investigation was undertaken as a result of the information received from Officer Wright.   (*Id.*, ¶42.)

Following the investigation, Plaintiff was given *a Notice of Proposed Personnel Action-Termination and Notice of Suspension with Pay Pending Decision* ("Notice of Proposed Action"), dated July 27, 2009.   (Dkt. 21-1, p. 8, ¶48.)   The Notice of Proposed Action advised Plaintiff that the PCSO had received information indicating that he had acted, omitted acts, or otherwise performed in ways which were contrary to the expectations or standards of conduct for Power County employees, and that he may be subject to discipline, up to dismissal, for such conduct.   (Dkt. 21-13, p. 1.)   The Notice of Proposed Action included an eleven page synopsis of Plaintiff's conduct warranting discipline, and concluded that, "pending consideration of any response by [Plaintiff] it is our present intention to terminate your employment with the County."   (*Id.*, p. 12.)   The Notice of Proposed Action further advised Plaintiff that he was entitled to respond, by either meeting with or submitting a written response to Sheriff Jeffries, by August 3, 2009, and that failure to do so would constitute a waiver of his right to respond.   (*Id.*, p. 1.)

On August 3, 2009, Plaintiff submitted his written response to the Notice of Proposed Action to Sheriff Jeffries.   (Dkt. 21-14, Dkt. 28-2, p. 7, ¶53.)   Plaintiff's response detailed his position with respect to the allegations contained within the Notice of

MEMORANDUM ORDER - 6

Proposed Action.   (Dkt. 28-2, p. 8, ¶54.)   On August 26, 2009, Plaintiff received a *Notice of Final Decision and Termination* from Sheriff Jeffries, which included Sheriff Jeffries' decision to terminate Plaintiff's employment.   (*Id.*, p. 8, ¶59, Docket 21-1, p. 9, ¶54.)

Plaintiff thereafter requested and received an appeal hearing.   (Dkt. 28-2, p. 8, ¶¶60- 61.)   Sheriff Jeffries presided over the recorded October 1, 2009 appeal hearing. (*Id.*, p. 9, ¶64.)   During the hearing, Plaintiff was represented by counsel and was given the opportunity to rebut information presented by witnesses. (Dkt. 21-1, p. 9, ¶58.) However, Sheriff Jeffries both presided over the hearing and made the ultimate determination to uphold his initial decision to terminate Plaintiff.      (Dkt. 28-2, p. 9, ¶¶64-65.)   On October 7, 2009, Sheriff Jeffries issued a *Notice of Final Decision Post Appeal* upholding Plaintiff's termination.   (Dkt. 21-1, p. 9, ¶59.)

On January 10, 2010, Plaintiff filed a Notice of Tort Claim with the Power County Clerk.   (*Id.*, p. 10, ¶68.)   On March 18, 2011, Plaintiff filed a Complaint against Power County and Sheriff Jeffries in the Idaho Federal District Court.   (Dkt. 28-2, p. 9, ¶67.)   In October, 2011, Plaintiff filed his Amended Complaint claiming breach of contract (either express or implied in law), violation of Idaho statute, violations of the First and Fourteenth Amendments, and violation of 42 U.S.C. §1983.   (Dkt. 17.)

On March 7, 2012, Defendants filed the instant motion for summary judgment. (Dkt. 21.)

MEMORANDUM ORDER - 7

## STANDARD OF REVIEW

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure.   Rule 56 provides that judgment shall be granted if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(a).

The Supreme Court has made it clear that under Rule 56 summary judgment is mandated if the non-moving party fails to make a showing sufficient to establish the existence of an element which is essential to the non-moving party's case and upon which the non-moving party will bear the burden of proof at trial.   *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).   If the non-moving party fails to make such a showing on any essential element, "there can be no 'genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."   *Id.* at 323.

Moreover, under Rule 56, it is clear that an issue, in order to preclude entry of summary judgment, must be both "material" and "genuine."   An issue is "material" if it affects the outcome of the litigation.   *Hahn v. Sargent*, 423 F.2d 461, 464 (1st Cir. 1975). An issue, before it may be considered "genuine," must be established by "sufficient evidence supporting the claimed factual dispute…to require a jury or judge to resolve the parties' differing versions of the truth at trial."   *Id.*   (*quoting First Nat'l Bank of Arizona v. Cities Serv. Co. Inc*., 391 U.S. 253, 289 (1968)).   The Ninth Circuit cases are in accord.

MEMORANDUM ORDER - 8

*See, e.g., British Motor Car Distrib. v. San Francisco Automotive Indus. Welfare Fund*, 882 F. 2d 371 (9th Cir. 1989).

According to the Ninth Circuit, in order to withstand a motion for summary judgment, a party:

> (1) Must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

*Id*. at 374 (citation omitted).

Of course, when applying the above standard, the court must view all of the evidence in a light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Hughes v. United States*, 953 F. 2d 531, 541 (9th Cir. 1992).

## ANALYSIS

**1. Existence of an Employment Contract**

*A. Policy Manual*

MEMORANDUM ORDER - 9

Plaintiff claims Defendants breached his employment contract, whether express or implied, by terminating him without cause and without following the procedures outlined in the Policy Manual.   Idaho law provides the relevant framework to determine whether Plaintiff was an at-will employee or one terminable only for cause.   *See, e.g., Bishop v. Wood*, 426 U.S. 341, 344 (1976).

The long-standing rule in Idaho is that unless an employee is hired pursuant to a contract which specifies the duration of the employment or limits the reasons for which an employee may be discharged, the employment is at the will of either party and the employer may terminate the relationship at any time without incurring liability.   *Holmes v. Union Oil Co. of Cal.*, 760 P.2d 1189, 1192 (Idaho 1988); *Thompson v. City of Idaho Falls*, 887 P.2d 1094, 1097 (Idaho 1994) (citations omitted).   Where there is an absence of an agreement limiting either party's right to terminate the employment relationship, either party may terminate it at either time or for any reason. [3]   *Raedlein v. Boise Cascade Corp.*, 931 P.2d 621, 623 (Idaho 1996).

A limitation on the right of the employer or employee to terminate the employment can be either express or implied.   *Sorenson v. Comm Tek, Inc.*, 799 P.2d 70, 72 (Idaho 1990).   A limitation will be implied when, from all of the circumstances surrounding the relationship, a reasonable person could conclude that both parties intended that either

---

3  The only exception to the employment-at-will doctrine is that an employer may be liable if the termination of at-will employment is for a reason which contravenes public policy.   *Jackson v. Minidoka Irrigation Dist.*, 563 P.2d 54, 57 (Idaho 1977).   Plaintiff does not claim he was fired in violation of public policy.

MEMORANDUM ORDER - 10

party's right to terminate the relationship was limited by the implied-in-fact agreement. *Raedlein*, 931 P.2d at 623.   Plaintiff maintains that the Policy Manual, the Sherriff's Manual, and oral statements made by his supervisors created a contract of employment under which he could only be terminated for cause.

Both the Sheriff's Manual and the Policy Manual contained provisions which would support Plaintiff's contention that he could only be fired for cause.   (*See, e.g*., Sheriff's Manual, Dkt. 28-5, p. 59 "Dismissal with Cause"; Policy Manual, Dkt. 21-8, p. 23 "…employees of Power County will not be…discharged from their positions except for cause related to performance of their job duties or violations of this policy.").

The Idaho Supreme Court has recognized that an employee handbook can constitute an element of an employment contract.   *Mitchell v. Zilog, Inc.*, 874 P.2d 520, 523 (Idaho 1994).   Whether a particular manual does so may be a question of fact unless the handbook "specifically negates any intention on the part of the employer to have it become a part of the employment contract." *Id.* at 523-24 (citation omitted).   In this case, both the Sheriff's Manual and the Policy Manual do specifically disclaim any intent to become part of the employment contract.

The Sheriff's Manual states, under "Authority and Administrative Policies, Application of Manual":

MEMORANDUM ORDER - 11

> The provisions of the Sheriff's Manual are applicable to all members/employees of the Sheriff's Department, but, under no circumstances is this handbook to be considered a contract, nor does it contain the elements of a contract.

(Dkt. 28-4, p. 26.)

Although this statement does not appear until chapter four of the Sheriff's Manual, disclaimers need not be prominently displayed in order to effectively negate an intention that the manual become part of an employment contract.   *Mitchell*, 874 P.2d at 525. Further, in *Lawson v. Umatilla Cnty.*, 139 F.3d 690, 693 (9th Cir. 1998) the Court determined a similar disclaimer stating, "under no circumstances shall these policies be construed to act as any type of employment contract with any employee of the County of Umatilla," precluded the district court from determining a policy manual altered a county employee's at-will status.

In reversing the district court's entry of judgment in favor of the employee, the *Lawson* Court found provisions of the manual stating no permanent employee could be disciplined except for cause "must be construed in conjunction with the 'under no circumstances' disclaimer.   So construed, these regulations merely provide a framework for disciplining at-will employees which is not binding on the County."   *Id.* at 694.   Thus, in this case, because of the aforementioned disclaimer, the policies provided in the Sheriff's Manual cannot be read to contractually alter Plaintiff's at-will status.    *Id.*

The Policy Manual more prominently disclaimed any intent to become an employment contract.   Specifically, the first page of the Manual provides:

MEMORANDUM ORDER - 12

THIS PERSONNEL POLICY IS NOT A CONTRACT.  NO CONTRACT OF EMPLOYMENT WITH POWER COUNTY WILL BE VALID UNLESS IT IS SIGNED IN ACCORDANCE WITH PROPER PROCEDURES BY A SPECIFICALLY AUTHORIZED REPRESENTATIVE OF POWER COUNTY, AND UNLESS IT IS SIGNED BY AND CONTAINS THE NAME OF THE EMPLOYEE WHO WOULD BE BENEFITTED BY THE CONTRACT.

CHANGES TO THE POLICIES AND BENEFIT OFFERINGS OUTLINED IN THIS HANDBOOK ARE SUBJECT TO CHANGE AT ANY TIME, WITHOUT NOTICE.  CHANGES MAY BE MADE IN THE SOLE DISCRETION OF THE POWER COUNTY COMISSIONERS

…This handbook, effective October 1st, 1999, supersedes any representations previously made whether verbal, written, expressed or implied.

(Dkt. 21-8, p. 1.) (emphasis in original)

Plaintiff does not contend that he had a separate written contract with Power County.   As such, the disclaimer provision precludes the Policy Manual from changing Plaintiff's at-will status to one under which he could only be fired for cause.   *Raedlein*, 931 P.2d at 624.   Moreover, at the time he received the Policy Manual in 1999, Plaintiff signed a Receipt and Acknowledgement Form stating:

This is to acknowledge that I have received a copy of the Power County Personnel Handbook, hereinafter "Handbook" and that I have read and do understand, or have had explained to me, all of the policies, definitions and rules contained therein.   I hereby agree to abide by the rules and policies expressed in the handbook.   I further understand and agree that this handbook is NOT AN EMPLOYMENT CONTRACT NOR IS IT A GUARANTEE OF ANY PARTICULAR LENGTH OR TERM OF EMPLOYMENT, even after I may have successfully completed an introductory period.   I also understand and agree that I am an EMPLOYEE AT WILL.   I acknowledge the right of the county officials to change and revise this handbook at their sole discretion, including the rules, definitions and benefits, whenever they determine, in their sole discretion, that such action is warranted.   I further acknowledge that the statements made in this handbook control over verbal statements and representations made by county elected officials, supervisors and

MEMORANDUM ORDER - 13

county employees.   I also acknowledge that the list of rules contained in the Handbook are ILLUSTRATIVE AND NOT ALL INCLUSIVE.

(Dkt. 21-9.) (emphasis in original)

Plaintiff testified in his deposition that he read the Receipt and Acknowledgment Form before he signed it, and that he understood the Receipt and Acknowledgment Form meant the Policy Manual was not a contract.   (Dkt. 21-5, pp. 20-21.)   In light of the disclaimers in both the Sheriff's Manual and Policy Manual, as well as the signed Receipt and Acknowledgement Form, the Court concludes that there is no genuine issue of material fact as to whether the contents of the manuals implied any contractual agreement other than one for at-will employment.

## B.   Oral Statements

Plaintiff also contends oral statements made to him by Russell Maxwell Sprague, a former Power County Sheriff, created an implied agreement that Plaintiff could only be fired for cause. [4]   (Dkt. 28-2, p. 2, ¶¶2, 7.)   Specifically, Plaintiff maintains Mr. Sprague told Plaintiff in 1990, when he was first hired, that once he completed his probationary term, Plaintiff could not be terminated except for cause.   (*Id.*)   Whether oral

---

[4] In his *Opposition to Defendants' Motion for Summary Judgment*, Plaintiff claims "statements made to him by Sheriff Jeffries and others" as well as "the course of conduct of the parties," imply that he could only be terminated for cause.   (Dkt. 28-1, p. 13.)   However, the only oral statement suggesting he would only be fired for cause that Plaintiff specifically identifies, in either his *Amended Complaint*, *Statement of Material Facts*, *Affidavit filed in Support of his Opposition to Defendants' Motion for Summary Judgment*, or *Opposition to Defendants' Motion for Summary Judgment*, is Mr. Sprague's statement when Plaintiff was first hired in 1990.   Plaintiff also fails to allege any specific facts to suggest Defendants followed a course of conduct that would imply employees were only fired for cause.   A party opposing summary judgment may not rest upon mere allegations, but must set forth specific facts showing a genuine issue for trial.   *Marek v. Lawrence*, 278 P.3d 920, 923 (Idaho 2012).   Because Plaintiff has failed to allege any other specific facts supporting an implied contract based on oral representations or a course of conduct, the Court will only consider the statement of Mr. Sprague for purposes of summary judgment.

MEMORANDUM ORDER - 14

representations can transform an at-will employment contract into more by adding implied terms is generally a question of fact.  *Huey v. Honeywell, Inc.*, 82 F.3d 327, 332 (9th Cir. 1996).

However, the Policy Manual, which Plaintiff received and read in 1999, specifically states that it superseded any representations previously made, whether verbal or implied. (Dkt. 21-8, p. 1.)   The Policy Manual also unequivocally provides that no contract with Power County is valid unless it is signed by both the appropriate authorized official of Power County and an individual, named employee.  (*Id.*)   Plaintiff also agreed that the Policy Manual controlled over "verbal statements and representations made by county elected officials, supervisors and county employees," when he signed the Receipt and Acknowledgment Form.   (Dkt. 21-9.)   Because the provisions of the Policy Manual and the Receipt and Acknowledgement Form "specifically negate any inference that statements of supervisors or peers may constitute a contract," there is no issue of fact as to whether oral statements created an implied contract.  *Mitchell*, 874 P.2d at 525 (affirming ruling of the district court that, as to the existence of an employment contract, no issue of fact existed despite alleged oral statements to the contrary).

Finally, Plaintiff argues that, because Mr. Sprague told him when he was first hired that his employment would only terminable for cause, the Policy Manual and Receipt and Acknowledgement Form could not change his employment status to at-will without any consideration for such alteration.   However, Idaho courts have determined that due to the

realities of the workplace, traditional contract analysis is inadequate when considering employment manuals, and unilateral contract analysis must instead be utilized. *Parker v. Boise Telco Federal Credit Union*, 923 P.2d 493, 498-99 (Idaho 1996); *Watson v. Idaho Falls Consol. Hospitals, Inc*., 720 P.2d 632, 636 (Idaho 1986).   Under such analysis, continuing to work (when there is no obligation to do so) after an at-will employment manual has been adopted is sufficient to establish the employee has accepted the unilateral modification of the employment relationship.

    *C.  Conclusion*

    In sum, the record shows that the disclaimers provided in both the Sheriff's Manual and the Policy Manual stated that nothing contained in the manuals were intended to be part of the employment relationship; that the 1999 Policy Manual superseded any contrary provisions in the Sheriff's Manual; that the Policy Manual specifically required any valid contract to be in writing and signed by both Power County and a specific named employee; that the aforementioned provision superseded and controlled over any previous verbal representations; that Power County reserved the right to unilaterally and without notice modify the manual; and that Plaintiff both received the Policy Manual and signed and understood the Receipt and Acknowledgement Form stating he was an employee at-will with no guarantee of any particular length or guarantee of employment in 1999, well before he was terminated in 2009.

MEMORANDUM ORDER - 16

In light of these facts, the Court concludes that there is no genuine issue of material fact as to whether Plaintiff had either an express or an implied contract under which he could only be fired for cause.   *Parker*, 923 P.2d at 500.   Because Plaintiff was an at-will employee, his breach of contract claim fails as a matter of law.

### 2.   Property Interest in Continued Employment

Although this Court finds Plaintiff did not, as a matter of law, have a contractual right to continued employment, this finding does not necessarily lead to a finding that Plaintiff also lacked a property interest in continued public employment.   While a property interest in continued employment can be created by contract, it can also be created by "existing rules or understandings that stem from an independent source such as state law--rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."   *The Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).   A property interest in employment can, of course, be created by statute or by ordinance.   *Bishop v. Wood*, 426 U.S. 341, 345 (1976).   Whether such "a guarantee has been given can be determined only by an examination of the particular statute or ordinance in question."   *Id.*   Plaintiff maintains he was given a property interest under both Idaho statute and Power County ordinance.

MEMORANDUM ORDER - 17

A.   *The Idaho Personnel System*

In Idaho, non-exempt employees of the state have been given a statutory interest in continued employment through establishment of the Idaho Personnel System (hereinafter "Personnel Act").   Idaho Code §§ 67-5301 *et. seq.* provides a personnel system "by which state employees can be examined and retained on the basis of merit, thereby promoting efficiency in government, which is required by the 'general welfare' and 'public good.'" *Hansen v. White*, 762 P.2d 820, 824 (Idaho 1988).   The Idaho legislature has declared a merit system serves the public interest by providing a means under which state employees can be examined and retained on the basis of merit, thereby promoting efficiency in government.   I.C. § 67-5301.

Under Idaho's Personnel Act, classified state employees may only be terminated for cause.   I.C. §67-5309(n).   Classified employees are defined as "any person appointed to or holding a position in any department in the state of Idaho which position is subject to the provisions of merit examination, selection, retention, promotion and dismissal requirements of chapter 53, title 67, Idaho Code."   I.C. §67-5302(5).   Counties are political subdivisions of the state.   *Hansen*, 762 P.2d at 824.   As an employee of Power County, Plaintiff is not a classified state employee under the Personnel Act.   I.C. §67-5301 *et. seq*.

MEMORANDUM ORDER - 18

However, the Idaho legislature has made the Personnel Act available not only to state employees, but also to political subdivisions within Idaho.   Idaho Code §67-5310 provides, in part:

> Subject to the approval of the administrator, agreements may be entered into with any political subdivision of the state of Idaho to furnish services and facilities of the division and staff to such political subdivisions in the administration of their personnel on merit principles.[5]

Further, Idaho Code §31-714 states "[t]he board of county commissioners may pass all ordinances and rules and make all regulations, not repugnant to law, necessary for carrying into effect or discharging the powers and duties conferred by the laws of the state of Idaho…".   As the Idaho Supreme Court determined in *Hansen*, "[r]ather than prohibiting county commissioners from instituting a merit system by statute, the Idaho legislature has, in fact, invited counties to enter into agreements with the state personnel commission to provide a merit program for county employees."   *Hansen*, at 824.   The *Hansen* court thus determined the county commissioners for Bear County had the constitutional and legislative authority to institute a merit system under which county employees could only be terminated for cause.   *Id.*

The Policy Manual at issue in this case was adopted by the Power County Board of County Commissioners, the governing body for Power County.   (Dkt. 21-8, p. 2.)   Under *Hansen*, it is clear that the Power County Board of County Commissioners had the

---

5 The "administrator" is defined as the "administrator of the division of human resources in the governor's office." I.C. §67-5302(2).

MEMORANDUM ORDER - 19

statutory and legislative authority to create a merit system under the Personnel Act pursuant to which county employees could only be fired for cause.

Whether the Power County Board of Commissioners actually established such a merit system under the Personnel Act is another issue.    Although the Personnel Act allows counties to enter into agreements with the state to administer personnel merit systems, there is no evidence of any such agreement between Power County and the State of Idaho.   That Power County did not enter into such an agreement is suggested by the significant differences between the rather limited appeal procedure outlined in the Policy Manual for employees seeking review of termination decisions and the extensive appeal procedure provided under the Personnel Act.

Specifically, the Policy Manual allows the elected official to make termination decisions.   (*Id.*, p. 43.)   An employee may appeal a termination decision, but the Policy Manual provides that the appeal hearing be under the direction of and heard before "the elected official responsible for department management."   (*Id.*, p. 44.)   The elected official is then responsible for rendering a final decision.   (*Id.*)   The Policy Manual does not provide for any further review.   Under the terms of the Policy Manual, Sherriff Jeffries, as the designated elected official, could make the decision to terminate Plaintiff, preside over Plaintiff's appeal hearing, and then make the final decision to affirm his own termination decision.

MEMORANDUM ORDER - 20

By contrast, Idaho's Personnel Act allows for several stages of review, including an appeal of an administrator's decision before a duly appointed hearing officer, and a subsequent review of the hearing officer's decision before the Idaho Personnel Commission.   I.C. §67-5316. At the time it was enacted, the Personnel Act expressly repealed all personnel laws in conflict, either in whole or in part, with any of its provisions, for the administration of any department covered under the Act.    I.C. §67-5304.   Power County could not thereafter establish a merit system under the Personnel Act with an entirely different, and much more circumscribed, termination review procedure than that statutorily required under the Personnel Act.[6]   Thus, no property interest was created by Power County under the Personnel Act upon which Plaintiff can base his claim.

### B.    *Power County Ordinance 1-6-2*

However, the Court need not determine Power County established a civil merit system under the Personnel Act in order to find Plaintiff had a property interest in continued employment.    A property interest in employment can also be created by ordinance.  *Harkness v. City of Burley*, 715 P.2d 1283, 1288 (1986); *see also Buckalew v. City of Grangeville*, 540 P.2d 1347, 1349 (Idaho 1975) (finding city ordinance providing appointment for specified term created a sufficient property interest in continued

---

[6] A municipality may not enact or adopt bylaws or ordinances which are inconsistent with state law or which infringe the spirit of state law.  *See, generally*, 56 *Am. Jur. 2d Municipal Corporations*, §315 (2013).

employment to prevent granting summary judgment against plaintiff employee).   Power County Ordinance 1-6-2 apparently codifies the Policy Manual as Power County law.[7]

Generally, a law establishes "'a property interest in employment if it restricts the grounds on which an employee may be discharged.'   For example, if discharge can only be for 'just cause,' an employee has a right to continued employment until there is just cause to dismiss him.'"   *Hayward v. Henderson*, 623 F.2d 596, 597 (9th Cir. 1980).   The Policy Manual restricts the grounds on which classified employees may be discharged.   Specifically, section VIII.A.1 of the Policy Manual provides employees of Power County will not be discharged from their positions "except for cause related to performance of their job duties or violations of this policy."   (Dkt. 21-8, p. 23.)   Section III.A.2 of the Policy Manual provides that the elected official of each Power County department shall have the right to "discharge or take other disciplinary action against employees for cause."   (*Id.*, p. 7.)

However, "a regulation granting broad discretion to a decision-maker does not create a property interest."   *Lowe v. Idaho Transp. Dept.*, 878 F. Supp. 2d 1166, 1177 (D. Idaho 2012) (*citing Doyle v. City of Medford*, 606 F.3d 667, 672-73 (9th Cir. 2010).

---

7 Power County Ordinance 1-6-2 provides, "[t]he personnel policies and guidelines for the County employees is hereby adopted by reference as if fully set forth herein, and such policies and guidelines shall be on file in the office of the County Clerk."   The Ordinance does not provide a link to or a copy of the Policy Manual.   However, the parties do not suggest Power County Ordinance 1-6-2 references any manual other than that submitted to the Court and analyzed herein.   Power County Ordinances are available online at www.sterlingcodifiers.com/codebook.index.php?book_id=838.

Further, whether "an expectation of entitlement is sufficient to create a property interest 'will depend largely upon the extent to which the statute contains mandatory language that restricts the discretion of the decisionmaker.'"   *Allen v. City of Beverly Hills*, 911 F.2d 367, 370 (9th Cir. 1990) (citation omitted).   The Policy Manual must accordingly be examined to determine whether its language is mandatory or directive, and whether or not its provisions are compulsory or discretionary.

The Policy Manual's section on "Workplace Conduct," lists eighteen rules Power County employees are expected to follow, but states, "[t]hese rules are not all-inclusive of conduct expected of Power County employees."   (Dkt. 21-8, pp. 12-17.)   The "Prohibited Workplace Conduct" section of the Policy Manual further mandates seventeen categories of prohibited conduct, but, again, states, "[t]he foregoing are not all-inclusive."   (*Id.*, p. 19.)   The Policy Manual also provides potential penalties for violation of any of the aforementioned rules may include, "*but shall not be limited to*," leave, suspension, demotion, reprimand or dismissal. (*Id.*, pp. 19-20.) (emphasis added).   The Policy Manual also repeatedly states that its provisions and policies are subject to change at any time, without prior notice, and at the sole discretion of the Board of County Commissioners. For instance, in its introductory policy statement, the Policy Manual states, "[t]he terms set forth in this booklet reflect public entity policy at the time of its printing, but they are subject to change at any time, without prior notice, and at the sole discretion of the BOCC." (*Id.*, p. 2.)   The "Employment Status" section of the Policy Manual reiterates, "Power

MEMORANDUM ORDER - 23

County retains full authority, without prior notice to modify the general terms and conditions of employment."  (*Id*., p. 24.)

In *Allen*, the Ninth Circuit determined a resolution allowing the City to terminate classified employees, "[w]henever…it becomes necessary in the interests of economy or because the necessity for a position no longer exists" precluded an employee's property interest in continued employment even where the resolution also required that the City act in good faith in making termination decisions and the employee claimed the City had not fired him for reasons related to economy or the necessity of retaining his position.  *Allen v. City of Beverly Hills*, 911 F.2d at 370.   In so holding, the *Allen* Court determined the resolution vested the City with broad discretion and did not impose the type of "'significant substantive restriction' on the City's discretion that would give Allen a legitimate expectation of entitlement to continued employment."  *Id*. at 372.

Instead of imposing particularized standards or criteria that significantly constrained its authority to terminate employees, Power County imposed advisory standards and retained broad discretion through its adoption of the Policy Manual. Because the Policy Manual does not limit either the discretion of Power County or the disciplinary standards it must apply, it cannot be read as creating a protected property interest.   *Allen*, 911 F.2d at 371; *see also Association of Orange Cnty. Deputy Sheriffs v. Gates*, 716 F.2d 733, 734 (9th Cir. 1983) (concluding the requirement of good cause prior

MEMORANDUM ORDER - 24

to the denial of a former deputy sheriff's weapons certificate did not "create a

constitutionally protected property interest, because it [was] not a significant substantive

restriction on the basis for [the] agency's action.")[8]

Moreover, as previously discussed, the Ninth Circuit has also considered whether a

handbook provision stating "[n]o permanent employee shall be disciplined except for

violation of established rules and regulations" altered plaintiff's at-will status in light of the

contractual disclaimer included within the handbook.   *Lawson v. Umatilla Cnty.*, 139 F.3d

690, 693 (9th Cir. 1998).    Because the handbook also contained the disclaimer, "[u]nder

no circumstances shall these policies be construed to act as any type of employment

contract with any employee of the County of Umatilla," the Court concluded the handbook

did not give the employee a property interest in continued employment.    In so holding, the

*Lawson* Court noted, "a disclaimer can retain the employee's at-will status even when the

policies also provide specific reasons for termination and for an appeals process."   *Id.*

(citations omitted).

---

8 In *Thompson v. City of Idaho Falls*, 887 P.2d 1094, 1098 (Idaho 1994) the Court considered plaintiff employee's argument that sections of an employment Code of Conduct detailing "just cause for 'issuing warning, suspension, or dismissal,'" limited the grounds for disciplinary action to those set forth in the Code.   The Court disagreed, finding that "the Code unequivocally states that '[t]hese examples are set out for the purpose of illustration and do not pretend (sic) to be all-inclusive.'"   *Id.*   Therefore, the Court determined the reasons for discharge "were clearly not confined to those twenty enumerated in the Code of Conduct."   *Id.* (*citing Jones v. EG &G Idaho, Inc.*, 726 P.2d 703 (Idaho 1986); *Arnold v. Diet Center, Inc.,* 746 P.2d 1090 (Idaho 1987)).   In *Spero v. Lockwood*, 721 P.2d 174, 175 (Idaho 1986), the Idaho Supreme Court noted that where, *inter alia*, an employer was "free to change the manual at any time and a certain level of executive could disregard or modify the manual at their pleasure," provisions contained within the manual regarding termination for cause could not alter the employment-at-will relationship.   *See also Parker v. Boise Telco Federal Credit Union*, 923 P.2d 493, 500 (Idaho 1996) (finding, *inter alia*, employer's reservation of right to unilaterally and without notice modify the manual precluded finding plaintiff had a right to progressive discipline procedures in manual).

Under *Lawson*, even the Policy Manual's provisions stating no employee should be dismissed except for cause fail to create a property interest when construed in conjunction with the contractual disclaimer.[9]  *Lawson*, 139 F.3d at 694.    In this case, the Policy Manual provisions on for cause termination must not only be construed in conjunction with the disclaimer, but must also be considered in light of the Receipt and Acknowledgment Form.   By signing the Form, Plaintiff expressly agreed that he was an employee at-will and that he understood the Policy Manual was "not an employment contract nor…a guarantee of any particular length or term of employment…even after a successfully completed introductory period."   (Dkt. 21-9.)   Plaintiff cannot claim to have relied upon the provisions of the manual when he unequivocally waived the right to do so.   If a policy manual is "not relied upon by the employee, or if it contains an effective disclaimer, it will not disturb the at-will relationship."   *Holmes v. Union Oil Co. of Cal.,* 760 P.2d 1189, 1194 (Idaho 1988) (citation omitted); *see also Jones v. Micron Technology, Inc.*, 923 P.2d 486 (Idaho 1996).

---

9 *Lawson* was interpreted under Oregon state law, which, unlike Idaho, includes a statute stating all county employees "hold office during the pleasure of the appointing officer."  *Lawson,* 139 F.3d at 692.   The *Lawson* Court considered the contractual disclaimer in light of the state statute establishing the general at-will status of county employees in order to determine Lawson was an at-will employee with no protected property right.   In this case, the Court does not find that the contractual disclaimer alone altered Plaintiff's right to continued employment.   Instead, the discretionary language of the Policy Manual, the contractual disclaimer, and the Receipt and Acknowledgment Form, under which Plaintiff unequivocally renounced a right to anything other than at-will employment, together preclude Plaintiff from claiming a property interest in continued employment.

MEMORANDUM ORDER - 26

In *Jones*, an employee claimed provisions in an employee handbook which limited grounds for termination precluded an employer from discharging him without cause. However, at the time he was hired, the employee signed an employment application stating he understood and agreed that, if hired, his employment would be for no definite period and could be terminated with or without cause, with or without notice, at any time.   The Court determined the employee's written acknowledgement that he was an at-will employee negated anything in the employment handbook to the contrary, noting:

> If a disclaimer printed in the employee handbook will be effective to negate an implication that the employment is terminable only for causes stated in the handbook, it follows that such implication may also be avoided by requiring execution of an express covenant that the employment is at will. Because Micron expressly required and Jones expressly accepted a covenant that the employment would be terminable without cause, Jones could not reasonably have inferred a simultaneous contrary intention from the 1990 handbook.

*Id.* at 491.

At the time the Policy Manual was distributed, Plaintiff also executed an express agreement that his employment was at will.   Plaintiff could not simultaneously infer a property interest in continued employment based on contrary provisions in the Policy Manual.   *Id.*; s*ee also Gianaculas v. Trans World Airlines, Inc*., 761 F.2d 1391, 1394 (9th Cir. 1985) (provision in employment application that employment may be terminated at any time without notice or liability precluded claim that policy manual manifested intent to

MEMORANDUM ORDER - 27

restrict employer's right to discharge, even where manual contained assurance that discharge would be for cause).

In sum, the Policy Manual and Receipt and Acknowledgment form contained effective disclaimers stating in a conspicuous manner that nothing contained in the manual was intended to be a part of the employment relationship.   The Policy Manual also reserved significant discretion, was subject to unilateral change without notice, and did not purport to provide mandatory, all-inclusive limitations on the reasons for employee discipline.   Furthermore, it is undisputed that Plaintiff signed the Receipt and Acknowledgment form stating he understood his employment was at-will and that the Policy Manual was not a guarantee of any particular length or term of employment.   Given these facts, the Court concludes Plaintiff did not have a property interest in continued employment with Power County.

### 3.   Procedural Due Process

Because the Court concludes Plaintiff has not established a property interest in continued employment, it need not consider Plaintiff's procedural due process claim. *Dyack v. Commonwealth of Northern Mariana Islands*, 317 F.3d 1030, 1033 (9th Cir. 2003) (citation omitted); *see also Thompson v. City of Idaho Falls*, 887 P.2d 1094, 1100 (Idaho 1994) (concluding there existed no genuine issue of material fact regarding

MEMORANDUM ORDER - 28

plaintiff's due process claim where plaintiff had no property interest in continued employment).

### 4. Violation of Plaintiff's First Amendment Rights

Plaintiff's lack of a property interest in continued employment does not, however, answer his First Amendment claim, as the government may not deny a benefit on a basis that infringes constitutionally protected interests, such as the interest in freedom of speech. *Perry v. Sindermann*, 408 U.S. 593, 597 (1972).   In order to determine whether Plaintiff's termination was impermissibly based on his constitutionally protected right to freedom of speech, the Court must first consider whether Plaintiff's speech constituted speech on a matter of public concern.   Where a public employee "speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior."   *Connick v. Myers*, 461 U.S. 138, 147 (1983).

### A.   *Public Concern*

Whether a public employee's speech involves a matter of public concern, for purposes of free speech protection, is determined by the content, form, and context of a given statement and is a question of law.   *Id*. at 147-148.   The Supreme Court has directed that the standard for determining whether something touches a matter of public

MEMORANDUM ORDER - 29

concern in First Amendment cases is the same as that used to determine whether a common-law action for invasion of privacy is present.   *Id*. at 143, n. 5; *see also City of San Diego, Cal. v. Roe*, 543 U.S. 77, 83-84 (2004) (citations omitted).   Specifically, "public concern in something that is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public at the time of publication."   *City of San Diego*, 543 U.S. at 84.

In this case, Plaintiff's First Amendment claim seeks protection of statements he made to Officer Wright involving the cancellation of Plaintiff's Dive Team insurance. Plaintiff's statements did nothing to inform the public about any aspect of Power County's functioning or operation.   For instance, Plaintiff does not allege that the insurance cancellation was a result of any invalid or discriminatory County Policy.   He instead seeks protection of statements involving only his personal dissatisfaction regarding the cancellation of his own insurance policy.   If conveyed to the public, Plaintiff's statements would provide no information at all other than the fact that he was upset with the insurance cancellation decision.   Such statements would not be of general interest or value to the public, and do not constitute matters of public concern.[10]   *Connick*, 461 U.S. at 148; *see*

---

10  Because his speech did not involve a matter of public concern, the Court need not balance the interests of Plaintiff, as a citizen, in commenting upon matters of public concern and the interest of Power County, as an employer, in promoting efficiency of the public services it performs through its employees, as required under *Pickering v. Board of Ed. of Township High School Dist*. 205, 391 U.S. 563 (1968).   The *Pickering* balancing test is not required where, as here, the public employee's speech does not touch on a matter of public concern.   *City of San Diego*, 543 U.S. at 82-83.

MEMORANDUM ORDER - 30

*also City of San Diego*, 543 U.S. at 84.   When employee expression "cannot be fairly

considered as relating to any matter of political, social, or other concern to the community,

government officials should enjoy wide latitude in managing their offices, without

intrusive oversight by the judiciary in the name of the First Amendment."   *Connick*, 461

U.S. at 146.


       B.    *Statements as a citizen*

     Plaintiff maintains that, because he was off duty when he told Officer Wright to

"cram the dive team in his ass," his statements were unrelated to his employment and

should be entitled to First Amendment protection.   (Dkt. 28-1. p. 8.) (*citing City of San*

*Diego*, 543 U.S. at 80.   When government employees "speak or write on their own time on

topics unrelated to their employment, the speech can have First Amendment protection,

absent some governmental justification 'far stronger than mere speculation' in regulating

it."   *City of San Diego,* 543 at 80 (*citing United States v. National Treasury Employees*

*Union*, 513 U.S. 454, 465 (1995)).


     In *United States v. National Treasury Employees Union*, 513 U.S. 454 (1995)

("*NTEU*"), the Supreme Court determined public employees are entitled to First

Amendment protection of speech unrelated to employment which has no effect on the

mission and purpose of the employer.   The question in *NTEU* was whether the

Government could impose monetary limitations on outside earnings from speaking and

MEMORANDUM ORDER - 31

writing on a particular class of federal employees.   The public employees in *NTEU* sought

compensation for expressive activities they undertook as citizens, and not employees.   *Id*.

at 465.

The *NTEU* Court held that the Government restriction violated the First

Amendment where the content of the employees' messages had nothing to do with their

jobs and did not even arguably have any adverse impact on the efficiency of the offices in

which they worked.   The Court also found that the Government could not restrict the

employees' speech where "[n]either the character of the authors, the subject matter of their

expression, the effect of the content of their expression on their official duties, nor the kind

of audiences they address has any relevance to their employment."   *Id*.

By contrast, although Plaintiff's statements took place outside of the workplace,

when Plaintiff was off duty, his statements were integrally involved with his employment.

At the time Plaintiff made his statements, the Power County Dive Team was organized

under the PCSO, pursuant to Sheriff Jeffries' chain of command, and as a division of the

Power County Search and Rescue Division.   (Dkt. 21-3, pp. 3-4, ¶¶18-20.)   The PCSO

was also responsible for paying the Dive Team's insurance premiums, as well as for the

decision to discontinue paying premiums for Dive Team members who failed to maintain

active status.   (*Id*., pp. 5-6, ¶28.)

MEMORANDUM ORDER - 32

Although Officer Wright was not an employee of PCSO, he was appointed by Sheriff Jeffries as the Dive Team Leader and Commander, and made the insurance discontinuation decision in conjunction with Sheriff Jeffries. (*Id.*)   In addition, the basis for Plaintiff's disagreement with the insurance discontinuation decision was Plaintiff's contention that he had not been able to maintain active Dive Team status because trainings conflicted with his duties as an employee of the PCSO.   (Dkt. 28-2, p. 5, ¶¶33-35.) Plaintiff's statements were also in violation of his probation, which required that he adhere to the policies of the PCSO, including the prohibition against using course, profane or insolent language in front of fellow employees or members of the public.   (Dkt. 21-10, p. 2.)   In light of these facts, Plaintiff's claim that his statements to Officer Wright had "absolutely nothing to do with his employment with the Power County Sheriff's Office" is without merit.   (Dkt. 28-1, p. 9.)

Plaintiff's speech was also detrimental to the interests of the PCSO.   The PCSO has a legitimate interest in enforcing its policies, and in disciplining employees who violate such policies.   Plaintiff was placed on probation for swearing at a member of the public, and was advised to refrain from using profane language in order to maintain his employment.   By telling Officer Wright to "cram the Dive Team in his ass," Plaintiff violated both his probation and PCSO policy.   Moreover, Officer Wright stated Plaintiff's statements would have caused a physical altercation had they been made in person, rather than over the telephone.   A physical fight between a PCSO employee and the leader of the

PCSO's Dive Team would inevitably disrupt the workplace.   Clearly, the PCSO has a legitimate interest in regulating speech contrary to its regulations and harmful to the proper functioning of the police force.   *City of San Diego*, 543 U.S. at 81.

### C.   Conclusion

Plaintiff's statements involved his employment with the PCSO, and his dissatisfaction with the PCSO's policy regarding the insurance discontinuation.   He expressed such dissatisfaction not as a citizen, but as an employee of the PCSO directly affected by the PCSO policy at issue.   Because Plaintiff's speech was made as an employee and because the speech cannot be fairly characterized as constituting speech on a matter of public concern, the Court need not scrutinize the reason for his discharge. *Connick*, 461 U.S. at 146.    Plaintiff's First Amendment claim fails as a matter of law.

### 5.   Substantive Due Process

Plaintiff's substantive due process claim appears to be premised on the allegation of a property right in continued employment purportedly created by the Personnel Act and the Policy Manual.[11]   However, as explained above, Plaintiff has not been given a property interest in continued employment under either the Personnel Act or the Policy Manual. To establish a substantive due process claim, "a plaintiff must, as a threshold matter, show

---

11 Plaintiff's *Opposition to Defendant's Motion for Summary Judgment* does not address his substantive due process claim.   However, Plaintiff's Amended Complaint suggests Defendants failed to give Plaintiff meaningful substantive due process as required by law and Power County's policies and procedures.   (Dkt. 17, p. 3, ¶17.)

a government deprivation of life, liberty or property." *Nunez v. City of Los Angeles*, 147

F.3d 867, 871 (9th Cir. 1998).   Substantive due process does not protect against the

discharge of a public employee terminable at the will of the employer.   *Bishop v. Wood*,

426 U.S. 341, 350 (1976) ("In the absence of any claim that the public employer was

motivated by a desire to curtail or to penalize the exercise of an employee's

constitutionally protected rights, we must presume that official action was regular….   The

Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or

ill-advised personnel decisions.").   Because Plaintiff has not established a property

interest in continued employment, his substantive due process claim fails as a matter of

law.[12]


### 6.   42 U.S.C. § 1983 Claim

To establish a prima facie case under 42 U.S.C. §1983, Plaintiff "must adduce proof

of two elements: (1) the action occurred 'under color of law' and (2) the action resulted in a

deprivation of a constitutional right or a federal statutory right."   *Souders v. Lucero*, 196

F.3d 1040, 1043 (9th Cir. 1999) (citation omitted).   In light of the Court's holdings

regarding Plaintiff's inability to establish a property interest in continued employment

---

12 Moreover, even if Plaintiff had established a property interest in continued employment, many courts have held
that such interest is not so fundamental as to be protected by substantive due process, even where the employment
termination is arbitrary, capricious or pretextual.   *See, e.g., Local 342, Long Island Pub. Serv. Employees v. Town Bd.
of Town of Huntington*, 31 F.3d 1191, 1196 (2nd Cir. 1994); *Nicholas v. Pennsylvania State Univ*., 227 F.3d 133, 143
(3rd Cir. 2000) ("[T]enured public employment…bears little resemblance to other rights and property interests that
have been deemed fundamental under the Constitution."); *Singleton v. Cecil*, 176 F.3d 419, 425 (8th Cir. 1999)
("There is no suggestion that a right to continued employment with a particular governmental employer has 'anything
resembling the individual's freedom of choice with respect to certain basic matter of procreation, marriage and family
life.'") (citation omitted).

under either the Personnel Act or the Policy Manual, as well as Plaintiff's inability to establish a constitutional violation in Power County's termination of such employment, Plaintiff has not demonstrated a constitutionally protected right upon which to base his §1983 claim.   Therefore, summary judgment with respect to Plaintiff's §1983 claim, against Power County and Sheriff Jeffries, in both his official and personal capacity, is granted.[13]

### 7.   Attorney Fees

Defendants seek an award of fees pursuant to Idaho Code § 12-120(3) to the extent Plaintiff's complaint represents a state claim based upon breach of an employment contract.   However, an award of statutory attorney fees to a prevailing party in an action relating to a commercial transaction is justified only if a commercial transaction comprises the gravamen of the lawsuit and the commercial transaction is integral to the claim and constitutes the basis upon which the party is attempting to recover. I.C. § 12-120(3); *Brower v. E.I. DuPont De Nemours and Co*., 792 P.2d 345, 349 (1990).   Because the employment contract was but one of several—including statutory and constitutional—claims upon which Plaintiff attempted to recover, the contract claim was

---

13  Where, as here, a defendant raises the affirmative defense of qualified immunity, the plaintiff bears the burden of first establishing that the defendant violated a constitutional or statutory right, and then showing that this right was clearly established at the time of the defendant's conduct.   *County of Sacramento v. Lewis*, 523 U.S. 833, 841 (1998). Because Plaintiff has not established a deprivation of a statutory or constitutional right, the Court need not consider whether Sheriff Jeffries' conduct violated a clearly established right.

not the gravamen of Plaintiff's lawsuit.   The Court thus denies Defendants' request for fees pursuant to Idaho Code § 12-120(3).

## ORDER

Now therefore it is hereby orders that Defendants' Motion for Summary Judgment (Dkt. 21) is **GRANTED**.

DATED: March 4, 2013

Edward J. Lodge
United States District Judge

MEMORANDUM ORDER - 37